# In the United States Court of Federal Claims

Case No. 06-359C
(FILED: April 30, 2007)
**TO BE PUBLISHED**

| | | |
|---|---|---|
| **AMY B. BURKHOLDER,** *Plaintiff,* v. **THE UNITED STATES OF AMERICA,** *Defendant.* | * | Money-mandating statute; 5 U.S.C. § 5514(a)(1); Installment deduction for indebtedness to the United States; 15 percent of disposable pay. |

***Barbara B. Hutchinson***, New Carrollton, Maryland, Counsel of Record for Plaintiff.

***Meredyth D. Cohen***, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., Attorney of Record for the Defendant. On the briefs were ***Jeffrey S. Pease***, ***Peter D. Keisler***, Assistant Attorney General, ***David M. Cohen***, Director, and ***Kathryn A. Bleecker***, Assistant Director. ***Lynn Dickinson***, EEOC Office of Legal Counsel, Of Counsel for Defendant.

***Arielle Cohen,*** law clerk.

## OPINION/ORDER

**BASKIR, Judge.**

This case involves a dispute over the Plaintiff's responsibility to pay health insurance premiums that the Government originally failed to deduct from her salary. The Plaintiff wants the Government to waive collection of the premiums.

We find that the debt waiver statutes cited by the Plaintiff are not money-mandating statutes which would confer jurisdiction on this Court. However, we find that the Court does have jurisdiction to consider the Plaintiff's claim that more than 15% of her disposable pay is being withheld to clear the indebtedness, in violation of 5 U.S.C. § 5514. **The Defendant's Motion to Dismiss is hereby GRANTED IN PART AND DENIED IN PART.**

I. Facts

The Plaintiff, Ms. Burkholder, is an employee of the U.S. Equal Employment Opportunity Commission ("EEOC"). Ms. Burkholder received standard biweekly earnings and leave statements at all times relevant to this action. *See* Compl. Ex. 7 at 2.

On October 27, 2000, the Plaintiff filed a Health Benefits Registration Form (#2809) to enroll herself, her husband and her two children in benefits. *See* Compl. Ex. 4. The first pay period after the enrollment began on November 5, 2000. The employee portion of the health insurance premium was not deducted from the Plaintiff's pay in that period or any pay period through the period ending August 21, 2004. *See* Compl. Ex. 7. However, Ms. Burkholder and her family were able to access health care without difficulty during this period. *See* Compl. Ex. 3 at 2. The failure to deduct the employee portion of the premium resulted in overpayments of the Plaintiff's salary totaling $23,067.32.

The Plaintiff does not dispute the time period or the amount of the overpayments. Consolidated Statement of Uncontroverted Facts ("CSUF") ¶¶ 2, 15. The Plaintiff also acknowledges that she received standard biweekly leave and earnings statements during the period relevant to this action. CSUF ¶ 4. While the statements are not part of the record at this stage, it appears that they accurately reflected that no deductions were being made. (If the statements showed deductions were being made, it would have resulted in a discrepancy between the statements and the Plaintiff's paychecks, which would surely have given her cause to make inquiries).

At the time the Plaintiff filed the enrollment form, the EEOC's payroll administration was handled by the General Services Administration ("GSA"). *See* Compl. Ex. 3 at 1. On September 23, 2001, the Department of the Interior ("DOI") took over payroll administration from GSA. *See* Compl. Ex. 3 at 1. Sometime in early January 2002, DOI contacted HR Specialist Garfield Freeman at EEOC to inform him – erroneously – that Plaintiff had apparently been dropped from the payroll, and to ask if she was receiving health benefits. *Id*. Mr. Freeman confirmed Ms. Burkholder's employment and enrollment in benefits and faxed copies of the Plaintiff's health benefits forms, backdated to September 23, 2001, to several contacts at both DOI and EEOC. *Id*.

Almost three years later, in August 2004, DOI contacted Mr. Freeman to tell him that an internal audit revealed that they had not been deducting health benefits from Ms. Burkholder's pay. *See* Compl. Ex. 3 at 1. The Government began deducting the current employee portion of health insurance premiums in the pay period beginning August 22, 2004. *See* Compl. Ex. 7 at 1.

On September 13, 2004, the Plaintiff received a bill from DOI for $7,015.98 for salary overpayments. The time period at issue was not indicated. Compl. Ex. 1. However, based on the amount, it seems likely that this bill reflects overpayments made during the time period before DOI took over payroll administration. The Plaintiff wrote

to DOI to request a waiver of the debt. Compl. Ex. 3. On October 12, 2004, the Plaintiff received another bill from DOI, this time for $16,103.44 for salary overpayments. Again, the time period at issue was not indicated, but the second bill perhaps reflects DOI's realization that overpayments also occurred while the DOI itself administered the payroll. Compl. Ex. 2. The Plaintiff wrote a second letter to DOI requesting a waiver of the debt. *See* Compl. Ex. 8.

On December 3, 2004, the Plaintiff received a letter from the EEOC denying her request for a waiver of the $7,015.98 debt. Compl. Ex. 7. The Plaintiff received no response to the second waiver request. *See* Compl. Ex. 8. On February 2, 2005, the Plaintiff requested a hearing from the EEOC, which was denied. Compl. Ex.s 8, 9. On March 1, 2006, the EEOC began deducting $381.85 from the Plaintiff's biweekly paycheck to pay back the salary overpayments which totaled $23,067.32.

## II. Discussion

In her Complaint, the Plaintiff recites a list of statutes and regulations that purportedly give the Court jurisdiction over her claim. The list includes 5 U.S.C. §§ 1491, 5514, 5584, and 8912 and 31 U.S.C. § 3711 as well as 5 C.F.R. §§ 890.502(c)(2) and 179.101 *et. seq*. The Government has filed a motion to dismiss this case in part for lack of subject matter jurisdiction under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), and in part for failure to state a claim upon which relief can be granted under RCFC 12(b)(6).

### A. General Jurisdictional Statutes

The Plaintiff cites the Tucker Act (5 U.S.C. § 1491), which is the primary jurisdictional statute for the United States Court of Federal Claims. It conveys jurisdiction and waives sovereign immunity for certain suits for money against the United States founded upon the Constitution or other laws. However, the substantive right to money from the United States must be found outside the Tucker Act. *See e.g., United States v. Mitchell*, 463 U.S. 206, 216-217 (1983); *United States v. Testan*, 424 U.S. 392, 398 (1976). A money-mandating provision is one that "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Testan*, 424 U.S. at 400 (quoting *Eastport S.S. Corp. v. United States*, 178 Ct. Cl. 599, 607 (1967)).

The Plaintiff also cites 5 U.S.C. § 8912. Like the Tucker Act, § 8912 fails to establish jurisdiction operating alone. It provides:

> The district courts of the United States have original jurisdiction, concurrent with the United States Claims Court, of a civil action or claim against the United States founded on this chapter.

However, the section does not add to the court's Tucker Act Jurisdiction, and a plaintiff must still establish a separate money-mandating claim under the chapter. *See Rosano v. United States*, 9 Cl. Ct. 137, 144 (1985).

B. Debt Waiver Statutes

The Plaintiff cites two statutes, 31 U.S.C. § 3711 and 5 U.S.C. § 5584, that allow the Government to waive collection of debts. Section 3711 is general, while § 5584 is addressed specifically to overpayment of salary and allowances. The Government argues that the language of both statutes is discretionary, not mandatory, and therefore does not establish jurisdiction in this Court. Our precedents support that reading of the language.

The general waiver statute 31 U.S.C. § 3711 reads in relevant part:

> Collection and compromise
>
> (a) The head of an executive, judicial, or legislative agency--
>
> (1) shall try to collect a claim of the United States Government for money or property arising out of the activities of, or referred to, the agency;
>
> (2) may compromise a claim of the Government of not more than $100,000 (excluding interest) or such higher amount as the Attorney General may from time to time prescribe that has not been referred to another executive or legislative agency for further collection action . . .; and
>
> (3) *may suspend or end collection action* on a claim referred to in clause (2) of this subsection when it appears that no person liable on the claim has the present or prospective ability to pay a significant amount of the claim or the cost of collecting the claim is likely to be more than the amount recovered.

31 U.S.C. § 3711 (emphasis added).

The more specific statute 5 U.S.C. § 5584 reads in relevant part:

> Claims for overpayment of pay and allowances, and of travel, transportation and relocation expenses and allowances
>
> (a) A claim of the United States against a person arising out of an erroneous payment of pay or allowances made on or after July 1, 1960, or arising out of an erroneous payment of travel, transportation or relocation expenses and allowances, to an employee of an agency, the collection of which would be against equity and good conscience and not in the best interests of the United States, *may be waived in whole or in part* . . .

5 U.S.C. § 5584 (emphasis added).

Where a statute contains discretionary language, such as the word 'may' rather than the word 'shall,' it creates "a very strong, but rebuttable, presumption" that the statute is not money-mandating. *Lawrence v. United States*, 69 Fed. Cl. 550, 555 (2006) *aff'd without opinion* 206 Fed.Appx. 993 (Fed.Cir. 2006) (Not selected for publication). *Lawrence* considered the very statute at issue here, 5 U.S.C. § 5584 and involved a fact pattern very similar to the present case. In *Lawrence*, the plaintiff received approximately $50,000 in overpayments during a three and a half year period. The plaintiff requested and was denied a waiver of the debt, and the government began deducting payments from his paycheck to pay back the debt.

The *Lawrence* court found that it had no jurisdiction. "The statute authorizing waiver by the agency, 5 U.S.C. § 5584, commits the decision whether to waive an employee's debt to the discretion of the agency and does not create the right to money damages." *Lawrence*, 69 Fed. Cl. at 554-55. We find the *Lawrence* court's discussion and holding persuasive. Section 5584 is not a money mandating provision giving rise to jurisdiction in this Court.

It is not clear that § 3711, the general waiver provision, is applicable to the Plaintiff – 5 C.F.R. § 890.502(c)(2) provides that in cases of underwithholding of health insurance premiums, the applicable waiver statute is § 5584. Even if § 3711 applies, the *Lawrence* argument is equally applicable. The plain language of § 3711, like the language of § 5844, allows but does not require the Government to cease collection of a debt.

Furthermore, § 3711 establishes certain conditions for the exercise of the Government's discretion which the Plaintiff has not alleged. Specifically, the Plaintiff has not alleged that she has no "present or prospective ability to pay a significant amount of the claim." 31 U.S.C. § 3711(a)(3). The fact that deductions from her wages are currently being made suggests exactly the opposite. At the current level of deductions, she will pay back the debt, incurred over a period of nearly four years, in approximately two and a half years.

C. <u>Procedural Claims</u>

"Count I" of the Plaintiff's complaint alleges a denial of due process. To the extent that the Plaintiff is alleging a violation of the Due Process Clause of the Fifth Amendment, we do not have jurisdiction because the clause is not money-mandating. *See e.g. LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995).

The Plaintiff also alleges that the EEOC failed to comply with the procedures for debt collection outlined in 5 C.F.R. § 179.101 *et. seq*. Regulations may be a source of jurisdiction under the Tucker Act, but the Plaintiff must still demonstrate that the regulations are money-mandating. *See e.g. Campbell v. United States,* 16 Cl.Ct. 690, 695 (1989).

In her Complaint, the Plaintiff asserts that "the applicable regulations . . . require waiver of a debt based on equity and good conscience; notice to the employee of the debt; notice of the amount, frequency, beginning date and duration of deductions; notice of a right to a hearing and hearing procedures; and notice of the right to request a waiver of the debt." Compl. 2. With the exception of waiver of the debt, discussed above, the Plaintiff does not allege that these alleged defaults in procedure, if corrected, would result in any alteration in the amount of her debt. Nor do these procedural defects entitle the Plaintiff to damages. They cannot fairly be interpreted as money-mandating.

D. Excessive Deductions

The Plaintiff has cited one other potential source of jurisdiction, 5 U.S.C. § 5514. Although the provision is not extensively addressed in the Complaint or the briefing, we must examine it as well – "When a complaint is filed alleging a Tucker Act claim based on a Constitutional provision, statute, or regulation . . . the trial court at the outset shall determine . . . whether the Constitutional provision, statute, or regulation is one that is money-mandating." *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005). We find that 5 U.S.C. § 5514 is money-mandating.

In order to establish jurisdiction in this Court, a plaintiff must identify a statute or regulation that "can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties it imposes." *Fisher* 402 F.3d at 1173 (citing *United States v. Mitchell*, 463 U.S. 206, 217 (1983)). This is known as the *Mitchell* test. As the Federal Circuit noted in *Fisher*, the United States Supreme Court articulated the standard somewhat differently in *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003), where it stated that a "fair inference" of a right to recover damages would be sufficient. We hold that 5 U.S.C. § 5514 satisfies the *Mitchell* test. Therefore there is no need to consider whether *White Mountain* actually articulates a less stringent standard. We follow *Fisher* and other Court of Claims and Federal Circuit decisions in remaining agnostic regarding whether the *White Mountain* test is different from the *Mitchell* test. *See Fisher; see also Carroll v. United States,* 67 Fed. Cl. 82 (2005), *aff'd* 198 Fed.Appx. 928, 931 (Fed. Cir. 2006) (not selected for publication).

Section 5514 provides procedures for recovery of indebtedness to the United States through deductions from salary and other payments. The section provides that "[t]he amount deducted for any period may not exceed 15 percent of disposable pay, except that a greater percentage may be deducted upon the written consent of the individual involved." 5 U.S.C. § 5514(a)(1).

The Federal Circuit has implied that 5 U.S.C. § 5514 is money-mandating. *Wells v. United States,* 420 F.3d 1343 (Fed. Cir. 2005). The plaintiff in *Wells* alleged that more than 15 percent of his military pay was being deducted to defray costs of his incarceration. The complaint was dismissed as being outside the applicable statute of limitations period. The Federal Circuit reversed. The court did not explicitly state that

§ 5514 is money-mandating. However, in describing the plaintiff's injury, the court stated:

> Here Wells' claim can be broken down into a series of independent and distinct wrongs or events-deducting more than 15% of Wells' retirement pay-each such wrong or event *having its own associated damages*-the difference between the amount permissible under section 5514(a)(1) and the actual deduction.

*Wells*, 420 F.3d at 1347 (emphasis added). The section clearly imposes a duty on the United States not to deduct an excessive amount from a debtor's pay. If that duty is breached, i.e. if more than 15 percent of disposable pay for a period is deducted, a fair interpretation of the statute would require refund of the excess deduction.

The Plaintiff alleges that on or about March 1, 2006, the EEOC began deducting $381.85 from her biweekly pay. Compl. 5. Furthermore, the Plaintiff states that this action "resulted in more than 15% of Ms. Burkholder's disposable pay being deducted from her biweekly pay." *Id.* This alleged violation of § 5514 through excessive deductions gives rise to jurisdiction in the Court of Federal Claims.

E. <u>Failure to State a Claim</u>

The Government argues that even if we have jurisdiction over the Plaintiff's claim of excessive deductions under § 5514, we should dismiss the claim under RCFC Rule 12(b)(6) for failure to state a claim. We disagree. The Plaintiff's allegation that more than 15% of her disposable pay is being deducted is sufficient to state a claim under § 5514.

The Government argues that Plaintiff would have a claim only if she disputed the underlying validity of the debt. The Government quotes *Lawrence* for this proposition. However, the court in *Lawrence* was evaluating the plaintiff's claim of an illegal exaction in violation of the debt waiver statute, 5 U.S.C. § 5584 – "Plaintiff maintains this Court has jurisdiction over this action because the Government effected an illegal exaction by withholding LQA [Living Quarter Allowance] overpayments from his salary in violation of . . . the waiver provisions of 5 U.S.C. § 5584." 69 Fed.Cl. at 556-57 (internal quotation omitted). The plaintiff in *Lawrence* argued that the entire amount the Government recovered was an illegal exaction. Logically, he would have to claim that the Government was not entitled to any of the amount. The Plaintiff's § 5514 claim, by contrast, effectively challenges only the amount of deduction that is in excess of 15% of her disposable income. By the words of the statute, the Government is not entitled to deduct that excess. The validity of the underlying debt is assumed.

This is the only reasonable reading of the statute. Otherwise, there would be no remedy for excessive deductions from salary, as long as the underlying indebtedness was valid. An agency could take 50% or 100% of a debtor's pay, and the debtor would be unable to challenge it.

VI. Conclusion

For the reasons discussed above, we hold that this Court has jurisdiction only to the extent of the Plaintiff's claim of excessive deductions under 5 U.S.C. § 5514. We further hold that the Plaintiff has stated a claim under that section. **The Defendant's Motion to Dismiss is hereby GRANTED IN PART AND DENIED IN PART.**

**The parties shall file a Joint Status Report suggesting further proceedings, no later than June 26, 2007.**

**IT IS SO ORDERED.**

/s/ Lawrence M. Baskir
LAWRENCE M. BASKIR
Judge